EUGENE LUNGSTRASS, Respondent, *v.* GERMAN INSURANCE COMPANY, Appellant.

1. *Insurance, fire, contract of — What acts essential to.*—The rule of law now is that a contract is complete when its acceptance is forwarded, without reference to the time of its reception. And any appropriate act which accepts the terms as they are intended to be accepted, so as to bind the acceptor, sufficiently evidences the concurrence of the parties. But mere assent, without notice or other appropriate and binding act, is insufficient.

2. *Insurance, fire, policy of — Letter of acceptance by insured not necessary to close contract, when — Remittance — Failure to remit premium — Agency.*—The agent of a fire insurance company, in response to his application therefor, received from it a policy of insurance on his goods. On the day of its receipt he made an entry in his book of accounts with the company of the amount chargeable against him for the premium. The next day the goods were burned. On his announcement of the loss, the company refused to pay on the ground that his premium had not been forwarded. *Held—*

1. That his entry of indebtedness being made on the receipt of the policy, and in a book in which his accounts with his principal were regularly kept, sufficiently closed his contract, without necessity of forwarding a letter of acceptance.

2. That inasmuch as his remittances were forwarded only at the end of each month, his failure to pay the amount of the premium before that time did not release the company from its liability.

*Appeal from Pettis Circuit Court.*

*Finkelnburg & Rassieur*, and *Crandall & Sinnet*, for appellant.

I. The contract of insurance never was consummated. This policy could have become binding only by the dispatch of a notification of acceptance directed to the insurer, by mail or otherwise, before the fire. (Phill. Ins., § 17 ; Taylor v. Merch. Fire Ins. Co., 9 How. 390 ; Wallingford v. Home Mutual Fire Ins. Co., 30 Mo. 46 ; Neville v. Merch. & Manuf. Ins. Co., 19 Ohio, 459. ) Assent must be signified to the other contracting party, and where the parties are at a distance such signification is by letter, dispatch, or other missive, put under way to the other party. (2 Dutcher, 280 ; 46 Mo. 366. ) In this case there was no union of minds, and the defendant could not have held plaintiff for the premium. (Ocean Ins. Co. v. Carrington, 3 Conn. 357. ) Where premiums cannot be enforced in law, the contract is not binding on the insurance company. (Neville v. Merch. & Manuf. Ins. Co., *supra*. )

II. Plaintiff cannot shield himself behind his agency. Having conducted the whole matter of negotiation from its inception with defendant directly by correspondence, he cannot now seek to bind defendant by any pretended private memorandum made in a memorandum book of his own, of which no notice was sent to defendant — of which defendant knew nothing, could know nothing, and which remained under plaintiff's control, to be made or unmade as he pleased. Indeed, he could not in law have acted as agent of both parties under any circumstances. Such contracts are void. "An agent of an insurance company, however broadly his authority may be expressed, has no power to act for

himself.   He cannot make a contract in which he acts directly for himself, and also as agent for the company." (Bentley v. Columbia Ins. Co., 19 Barb. 595 ; Utica Ins. Co. v. Toledo Ins. Co., 17 Barb. 133.)

*Phillips & Vest*, for respondent.

The company, by the terms of its letter, charged plaintiff with a premium of $99.35.   Could it thus hold itself in the double vantage-ground of claiming this premium if there had been no fire on the 7th of November, 1867, and then not be liable to him in the event of a fire?

Furthermore, when plaintiff received the altered policy, and charged himself with the premium of two per cent., he had not received the letter purporting to have been written on the 4th of November, 1867 ; and of course the entries made by him on the 6th of November, prior to the fire, were pursuant to this letter, and in the usual course of business.   The court properly declared the law in the instructions given for the respondent.   (42 Mo. 38, 41 ; 5 Ind. 96 ; Chase v. Ham. Mut. Ins. Co. of Salem, 22 Barb., S. C., 527 ; Taylor v. Mer. Fire Ins. Co., 9 How. 390.)

Defendant claims that plaintiff should have notified the company before the fire of his acceptance of the policy at two per cent.   This theory of the appellant wholly ignores the well-settled principle that during a negotiation of this character, whenever the *aggregatio mentium* takes place, the contract of insurance is complete.   (Ang. Fire and Life Ins. 69, § 34 ; Keim *et al.* v. Home Mut. Ins. Co., 42 Mo. 41.)

When the company first sent up the policy on the 28th October, they did not contemplate that the assured should notify them of his acceptance, for they informed him in their letter that they had charged him with the premium, and directed him to sign the policy as agent.   He never notified the company of the acceptance of the other two policies, and yet they received the premiums November 13th, and considered the parties insured from the 26th of October.   (Ang. Fire and Life Ins. 83, § 47.)

BLISS, Judge, delivered the opinion of the court.

The plaintiff holds a policy of insurance issued under the following circumstances : He had been appointed agent of defendant for Sedalia, and on the 28th of October, in response to applications obtained and forwarded by him, the secretary sent him policies numbered 294, 295 and 296, the first being a policy upon his own goods.   The premium charged was two and a-half per. cent., and, being dissatisfied with the rate, the plaintiff sent back his own policy for a reduction.   It was reduced to two per cent. and returned, and the plaintiff claims that he received it on the 6th of November, and that on the same day he made an entry in his account with the company, recognizing the change of rate and accepting the policy as changed.   Early in the morning of the 7th the plaintiff's goods were burned, and on the 8th he telegraphed the fact, claiming the benefit of the policy.   The company, by its secretary, at once repudiated it, upon the alleged ground that the premium had not been remitted, but now claim it to have been invalid because no notice of its acceptance was sent to the company.

Counsel for appellant contend that this case comes under the rules governing contracts by correspondence, and that the contract was not consummated.

It is true that no contract can arise from a proposition or offer on one side until it is accepted on the other ; until then it remains merely a proposition.   And it is also true that this acceptance must be evidenced by some act that binds the party accepting.   A man's mental resolution, that can be changed, is not sufficient ; both parties must be bound or neither will be.   The usual mode of accepting a proposition made by correspondence is by notice of acceptance, and though it was formerly held that it did not ripen into a contract until receipt of the notice, yet the doctrine now is that the contract is complete when the acceptance is forwarded, without reference to the time of its reception.   (Kentucky M. Ins. Co. v. Jenks, 5 Ind. 96 ; Halleck v. Com. Ins. Co., 2l Dutcher, 280 ; Taylor v. M. F. Ins. Co., 9 How. 390.)   But notice is not the only evidence of acceptance.

Lungstrass v. German Ins. Co.

Any appropriate act which accepts the terms as they were intended to be accepted, so as to bind the acceptor, just as clearly evidences the concurrence of the parties — the bringing their minds together — as a formal letter of acceptance. The terms, "the nature of the offer, or circumstances under which it is made," or relation of the parties, may indicate another mode; and if so, its adoption equally binds them.

The plaintiff, as agent, was to make his returns monthly, and when the fire occurred the time for making his current monthly return had not arrived. The secretary, on his appointment as agent, had given him a book, being "the tariff of rates and general instruction book for the exclusive use of agents," of a Cincinnati company, saying to him that the company had adopted their rules until some could be printed in its own name. Among them was the following:

"21. Insurance of your own property. If you have property of your own which you desire to have insured, * * * please forward us your application fully made out and signed, and if the risk is such as we can take, will make you a policy at this office at a fair rate, and mail it to you promptly. * * You will enter the risk on your abstract and take credit in your next account current for commission on the premium, as if the policy had been issued by yourself."

There may be some ambiguity in this instruction, but both parties seemed to understand it to mean that, as to all things but the acceptance of the risk, fixing the rate and issuing the policy, the transaction was to be the same as with an outsider through the agent, i. e. as the agent delivers the policy, receives the premiums, and credits the company with them, to be remitted at his next return, so he credits the company with his own premium, to be remitted in like manner. The following letter, in reply to the applications forwarded by him, including his own, No. 294, also shows this understanding:

"Enclosed transmit to you

| | | |
|---|---|---|
| Pol. 294 | $51 25 | $42 75 |
| " 295 | 37 25 | 30 85 |
| " 296 | 31 25 | 25 75 |

For which you are charged with $99 35"

Here no notice of acceptance and no remittance was required, but plaintiff was charged with the premiums less the commissions, including his own. Had the plaintiff been satisfied with the rate charged him, would any other notice of the acceptance of the policy have been thought of than the entry of the charges to the credit of the company, which was at once made? But he was dissatisfied with his own, and sent it back for abatement. It was returned reduced to two per cent., and, as the plaintiff testifies, received on the 6th of November, and the difference charged back to the company. After the fire, and in response to its announcement, the secretary sends the following telegram: "Policy 294 is not in force, as the premium was not paid; see our letter of November 4th." No objection is made because notice of acceptance had not been sent, but only because the premium was not remitted; and the letter of November 4th, to be hereafter considered, makes the payment of all the premiums at the company's office, as well as that of No. 294, a condition precedent to the taking effect of the policies; and so far as notice is concerned, aside from such remittance, it negatives the idea that it was expected; and indeed the whole record shows that notice of the acceptance of the policy was not contemplated at the time, and was only thought of after this controversy arose.

I assume that, previous to the letter of November 4th, it was the understanding that remittances were to be made monthly, for so plaintiff and the secretary testify; and I assume, what seems to have been the clear understanding, that the premiums on the plaintiff's policy were to be credited and remitted like the others. The inquiry then arises whether anything was done by the plaintiff after the second receipt of the policy, and before the fire, that amounted to an acceptance of its terms and bound him to pay the premium. He exhibits his account with the company, and testifies that every entry was made at its date. We find under date of October 28th a credit of each of the premiums as in the statement forwarded, and under date of November 6th, the day before the fire, an entry of a charge to the company of the difference between the original premium and as reduced to two per cent. This act unequivocally shows that he intended to abide by the policy as

last received, and he became thereby bound by its terms; and had there been no fire, nothing further was to be done until the time for remittance at the end of the current month.

I have alluded to the letter of November 4th, which contains the following postscript: "We call to your attention that policies go into effect only when premiums are paid here." There is a conflict of testimony in regard to the time of its receipt, the plaintiff testifying that it did not come to hand until the 8th, while the company's secretary says that it was mailed at its date, in which case it should have been received on the 5th — an important variance; but we cannot pass upon these questions of fact, and will only consider whether the instructions to the jury conform to our view of the law.

Most of those asked by defendant assume that the policy could not go into effect without express notice of its acceptance, when other acts could as well signify acceptance and bind the parties. They were therefore properly rejected.

Instruction No. 3, given on behalf of plaintiff, predicates the validity of the policy upon its having been assented to before the fire, and neither notice nor any other appropriate act signifying assent and binding the insured is required. This instruction was at least defective, and we cannot say that it did not mislead the jury. Express notice of acceptance can only be dispensed with when apparently not contemplated, and some other act of acceptance is equally clear and unequivocal. The record shows conflicting evidence in regard to facts bearing upon this question, and for this instruction I think a new trial should be granted.

Reversed and remanded. The other judges concur.